T.C. Memo. 1996-320


UNITED STATES TAX COURT


SHERRI A. MULNE A.K.A. SHERRI A. SHANNON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10984-94.                    Filed July 15, 1996.


Sherri A. Shannon, pro se.


<u>Michele Leichtman</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined a deficiency in petitioner's 1991 Federal income tax in the amount of $4,955, plus an accuracy-

------

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

related penalty under section 6662(a) in the amount of $991.

The issues for decision are: (1) Whether petitioner is entitled to deductions for certain employee business expenses; (2) whether petitioner is entitled to a section 179 deduction for a computer and printer, a camera, and a telephone; (3) whether petitioner is entitled to a home-office deduction; and (4) whether petitioner is liable for the accuracy-related penalty.

In the notice of deficiency, respondent allowed a charitable contribution deduction of $1,420 and disallowed $4,600. In her opening statement, respondent's counsel conceded an additional $210 of the charitable contribution deduction. The parties agree that the stipulation resolves the charitable contribution deduction issue; therefore, we hold that the remaining amount ($4,390) is conceded by petitioner.

On Schedule A, petitioner claimed a deduction for employee business expenses of $18,666 ($20,132 less $1,466 per section 67(a)). In the notice of deficiency, respondent allowed a deduction for employee business expenses of $5,559 ($7,025 less $1,466). Respondent's counsel did not provide the Court with details concerning the amount allowed. However, the employee business expenses claimed on petitioner's return that were not addressed during the trial of this matter include: Vehicle expenses of $5,061; books and magazines of $457; language classes of $255; and telephone of $252. We shall assume the total of

these amounts, or $6,025, was a portion of the $7,025 allowed in the notice of deficiency. The remaining amount of $1,000 was not explained in the record.

For convenience, we combine our findings of fact and opinion on an issue by issue basis. We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and that the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of the filing of this petition, petitioner resided in Victorville, California.

Employee Business Expenses

a. Parking Expenses. From January through July 28, 1991, petitioner was employed by Pacific Bell Yellow Pages (Pacific Bell) as a telemarketing sales manager of inside sales representatives. On July 29, 1991, petitioner was promoted by

Pacific Bell to the position of premise sales manager of outside and inside sales representatives.  As premise sales manager, petitioner was responsible for achieving sales commitments for a specific territory through the supervision, motivation, and development of sales representatives; designing and implementing sales campaign strategies; handling customer contacts; reviewing the accuracy of paperwork; and preparing administrative reports.  Petitioner's territory included the coastal region from Malibu to Palos Verdes, plus Alhambra, Pasadena, and Orange County.

Petitioner had an office at Pacific Bell that was located in downtown Los Angeles (the downtown office).  Petitioner's schedule varied daily, and she had no set routine.  Sometimes she worked at her home in the morning and drove to the downtown office or a satellite office in the afternoon.  On other occasions, she worked at the downtown office all day or visited customers during the day.  In 1991, petitioner paid for a parking space near the downtown office.  Petitioner believed it was a necessity to have her car at the downtown office in case she needed to visit a customer, satellite office, or perform other business-related activities.

According to a stipulated letter from Cheryl Groves, who is a premise sales manager at Pacific Bell, company business expenses for "parking charges" were reimbursable by Pacific Bell. It is not clear from this letter whether such charges refer only

to off-site parking charges (i.e., charges incurred to attend meetings or visit customers away from the downtown office) or whether such charges included parking at the downtown office. Petitioner was unaware that she possibly could be reimbursed for parking at the downtown office. Petitioner claimed a Schedule A deduction for parking of $1,254.

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. The performance of services as an employee constitutes a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988). An ordinary expense is one that is common and acceptable in the particular business. Welch v. Helvering, supra at 113-114. A necessary expense is an expense that is appropriate and helpful in carrying on the trade or business. Heineman v. Commissioner, 82 T.C. 538, 543 (1984).

When an employee has a right to reimbursement for expenditures related to her status as an employee, but fails to claim such reimbursement, the employee's expenses are not deductible because the employee's expenditures are not "necessary"; i.e., it is not necessary for an employee to remain unreimbursed for expenses to the extent he or she could have been reimbursed. Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Lucas v. Commissioner, 79 T.C. 1, 7 (1982); Kennelly v. Commissioner, 56

T.C. 936, 943 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972). Furthermore, the mere failure of an employee to seek reimbursement cannot convert the employer's expenses into the employee's. Kennelly v. Commissioner, supra. The burden of establishing that the expense was not reimbursable by the employer had the employee requested reimbursement rests with the employee. Podems v. Commissioner, 24 T.C. 21, 23 (1955). Moreover, the prohibition of deductions for reimbursable expenses is a "bright line rule" and applies even when the employee is unaware that the expenses are reimbursable. Orvis v. Commissioner, supra at 1408.

Based on Ms. Groves' letter, it appears that petitioner's parking expenses could have been reimbursed by Pacific Bell had petitioner sought reimbursement. Moreover, petitioner has not proven that her parking expenses at the downtown office were not reimbursable. Therefore, these expenses are not "necessary" under section 162 and therefore not deductible.[2]

b. Meals Expenses. Petitioner claimed a Schedule A deduction for meals expenses of $3,875, less 20 percent required by section 274(n). As sales manager, petitioner was required by Pacific Bell to motivate her sales representatives so that they

_____

[2] Moreover, we note that the canceled checks presented by petitioner do not adequately substantiate the alleged parking expenditures, nor is it clear that the parking charges were not a nondeductible personal (i.e., commuting) expense. Secs. 267, 274(d).

would maximize revenue. To motivate her sales representatives and show her appreciation for their work, petitioner, from time to time, took them out to lunch or dinner. On 26 occasions in 1991, petitioner entertained her sales representatives and incurred substantiated expenses of $1,843.23. In addition, petitioner held meetings with her sales representatives, either individually or in small groups in places near the downtown office, over coffee and donuts, bagels, or fruit to discuss work-related problems or accounts. In this regard, she incurred expenses of $569 over 60 separate documented occasions. (We refer to both of these categories collectively as the meals expenses.)

Respondent called John Moreno (Mr. Moreno) to testify as to Pacific Bell's corporate policy regarding reimbursement of meals and entertainment expenses. At the time of the trial, Mr. Moreno was an outside sales representative for Pacific Bell, but in 1991 he was a telemarketing branch manager for Pacific Bell. For part of 1991, until petitioner was promoted, he was petitioner's supervisor or reviewer. In a rather vague response to a question concerning Pacific Bell's reimbursement policy for meals and entertainment expenses incurred by an employee, Mr. Moreno stated that Pacific Bell "would reimburse for expenses if the sales manager vouchered those expenses." In other words, Pacific Bell would reimburse an employee if the manager approved the expense.

The record indicates that the vouchers had several approval levels, and it was certainly not clear that the immediate superior's approval was final.

Moreover, Mr. Moreno's standard for approval apparently was one of reasonableness, but he did not elaborate on that term, except to say

> the policy was fairly flexible.  As far as the monies that were reimbursed, if it was felt it was reasonable, then, yes, we would be reimbursing.  If it was a daily or weekly voucher, that was not considered reasonable. So it just depended on the individual manager, and also the number of representatives that they had reporting to them.

> \*   \*   \*   \*   \*   \*   \*

> At the time Mrs. Shannon was reporting to me, primarily, she was responsible for the inside sales representatives.  And that was not, let's say, those entertainment--those meals were not as common or as ongoing as they would be for an outside sales representative.

Thereafter, Mr. Moreno opined that "reasonable" usually means $10 to $15 per person for lunch or dinner once or twice a month; however, whether a meals expense is considered "reasonable" depends on the number of sales representatives the manager supervised and the particular events or circumstances surrounding the meals expense, such as whether Pacific Bell was sponsoring a special campaign or contest.

The receipts and calendar presented by petitioner indicate that she took her sales representatives out for lunch or dinner between 2 to 4 times per month and incurred meals expenses in

connection with sales representative meetings between 2 to 7 times per month. Petitioner credibly testified that her meals expenses were not reimbursable by Pacific Bell. Mr. Moreno did not convince us otherwise. Ms. Groves' letter did not mention any Pacific Bell policy regarding reimbursement for meals with other employees. Accordingly, we hold that petitioner's meals expenses were not reimbursable by Pacific Bell.

To substantiate her meals expenses, petitioner presented a detailed calendar for 1991 in which she recorded the date, amount, place, and business purpose of the meals expenses. In addition, petitioner credibly testified that the meals expenses were incurred to motivate her sales representatives or incurred in connection with meetings to discuss accounts or other work-related problems with her sales representatives. Based on petitioner's calendar and testimony, we conclude that she incurred meals expenses for lunch and dinner of $1,843.20 and for sales representative meetings of $569. Accordingly, petitioner is entitled to a meals expense deduction based on those amounts, subject to the 80-percent limitation imposed by section 274(n).

c. Contest Prizes. In 1991, Pacific Bell held a 6-month contest to motivate the sales representatives to maximize revenue. Winners of the contest received awards totaling $1,000. The sales manager was required to pay the bonus and was entitled to reimbursement from Pacific Bell. Four of petitioner's sales

representatives won the contest. Three of the sales representatives used the bonus to take a cruise from Los Angeles to San Diego, and one sales representative used the bonus to go to Las Vegas. Petitioner charged the cost of these trips (about $1,000) on her Pacific Bell Mechanic's Bank credit card and subsequently paid the credit card bill.[3]

Petitioner and Mr. Moreno testified that petitioner was entitled to reimbursement for the cost of these trips. Further, petitioner submitted a voucher for reimbursement; however, the voucher was returned to petitioner for corrections, which she made. Nevertheless, petitioner does not remember receiving the reimbursement, due to the illness of her mother which occurred at or about the same time. Although we sympathize with petitioner, her failure to follow up on the claim for reimbursement due to personal problems does not convert this expense into a deductible employee business expense. Since this expense was reimbursable, it is not "necessary" under section 162, and petitioner is not entitled to a deduction for such amount. (However, we note that the amount of this issue coincides with the $1,000 allowed by respondent, but unexplained in the record. See supra note 2.)

Section 179 Deduction

---

[3] The Pacific Bell Mechanic's Bank credit card was not for a corporate account. Pacific Bell required petitioner to keep the credit card in her name and pay the bill out of her personal checking account. If she incurred a reimbursable expense, she was required to submit a reimbursement form to Pacific Bell.

During 1991, petitioner purchased an old IBM computer and printer for her home office for $3,689. Petitioner was a credible witness, and we believe, and so find, that she used the computer and printer exclusively for business purposes to write various reports and other documents required by Pacific Bell and to keep up with the volume of work associated with her position as sales manager.

Petitioner also purchased a Nikon camera in 1991 for $617.84, which was used to take pictures of customers and/or their businesses. These pictures were used in yellow page advertisements. The camera was kept in petitioner's locked desk drawer at the downtown office and was used only by sales representatives for business reasons. Pacific Bell did not provide a camera and did not require petitioner to purchase a camera.

In addition, petitioner purchased a telephone for her home office for approximately $180. The telephone was allegedly used only for business calls. Petitioner did not have a separate business telephone line in her home office.

On Form 4562 attached to her 1991 return, petitioner claimed a section 179 expense deduction for a computer and printer, telephone, and camera. According to the Form 4562, the cost basis of the computer and printer was $3,700 and the cost basis of the camera and telephone was $800.

Section 179(a) allows a taxpayer to elect to expense, in the year placed in service, the cost of section 179 property. Section 179 property includes any tangible property (to which section 168 applies) which is section 1245 property which is acquired for use in the active conduct of a trade or business. Sec. 179(d)(1). Section 1245 property includes personal property. Sec. 1245(a)(3). Section 280F(d), however, provides that an employee may not claim a section 179 deduction for "listed property" unless the employee's use of the listed property is for the convenience of the employer and required as a condition of employment. In addition, the strict substantiation requirements of section 274(d) must be met with respect to listed property. Listed property includes any computer or peripheral property. Sec. 280F(d)(4)(A)(iv). The camera and telephone are not listed property.

The "convenience of the employer" and "condition of employment" tests are essentially the same. United States Junior Chamber of Commerce v. Commissioner, 167 Ct. Cl. 392, 334 F.2d 660, 663 (1964). In order to satisfy the condition of employment requirement, the use of the property must be required in order for the employee to perform the duties of his or her employment properly. Sec. 1.280F-6T(a)(2)(ii), Temporary Income Tax Regs., 49 Fed. Reg. 42701, 42713 (Oct. 24, 1984). Whether the use of property is so required depends on all the facts and

circumstances. The standard is an objective one. <u>Dole v. Commissioner</u>, 43 T.C. 697, 706 (1965), affd. 351 F.2d 308 (1st Cir. 1965). The employer need not explicitly require the employee to use the property. Similarly, a mere statement by the employer that the use of the property is a condition of employment is not sufficient. Sec. 1.280F-6T(a)(2)(ii), Temporary Income Tax Regs., 49 Fed. Reg 42701, 42713 (Oct. 24, 1984).

Because of her heavy caseload and the number of sales representatives she managed, it was necessary for petitioner to purchase a computer and printer. Petitioner used the computer and printer to complete various reports she was required to submit to her supervisors at Pacific Bell. Mr. Moreno testified that sales managers could access information at home via modem and that by using computers at home sales managers were able to work efficiently and keep on top of the volume of work. Mr. Moreno further testified that only third level management could enter the building after hours and that petitioner was considered second level management. Thus, petitioner was unable to use the office computer after business hours. We find, based on the facts and circumstances presented, that petitioner's purchase of the computer and printer was for the convenience of her employer and required as a condition of employment. Accordingly,

petitioner is entitled to a section 179 deduction for the computer and printer based on their cost of $3,689.

The purchase of the camera was, according to petitioner, for the purpose of enhancing her performance as a sales manager for Pacific Bell. Specifically, the camera was used to take pictures for use in the clients' advertisements in the telephone directory. Petitioner kept the camera locked in her desk at the downtown office and the camera was used only in connection with Pacific Bell advertisements. We conclude that the camera was used exclusively for petitioner's business (as an employee) and its purchase for $617.84 qualifies for a section 179 deduction.

As for the telephone, we do not believe that its purchase was ordinary and necessary or that petitioner used the telephone located in the home office only for business purposes. Accordingly, petitioner is not entitled to a deduction for the cost of the telephone.

Home-Office Deduction

In 1991, petitioner lived in an apartment in Glendale, California. The apartment was approximately 900 to 1000 square feet in size and consisted of two bedrooms, two bathrooms, living room, kitchen, dining room, and hallway. Petitioner paid rent of $1,030 per month for the apartment. Petitioner used the smaller bedroom, which was about one fifth of the apartment, as an office. Petitioner worked in her home office during the

evenings and weekends; however, she had no set routine concerning the use of the office. Pacific Bell did not require sales managers to have a home office. However, Pacific Bell preferred them to have a home office if it promoted time management, enabled managers to access information to better coach the sales representatives, and to keep on top of the volume of work. On Schedule A, petitioner claimed a deduction for a home office of $3,900.

Section 280A, in general, denies deductions with respect to the use of a dwelling unit that is used by the taxpayer during the taxable year as a residence. Section 280A(c) permits the deduction of expenses allocable to a portion of the dwelling unit that is exclusively used on a regular basis as "the principal place of business" for any trade or business of the taxpayer. Sec. 280A(c)(1)(A). Section 280A(c) further provides that, in the case of an employee, deductions are allowable only if the use of the dwelling is for the convenience of the employer.

Since petitioner was an employee, she must satisfy two tests in order to qualify for the home-office deduction. She must establish (1) that her home office was her principal place of business, and (2) that she maintained the office for the convenience of her employer. In deciding this case, the Court must employ the definition of "principal place of business" as set forth in Commissioner v. Soliman, 506 U.S. 168, 174 (1993).

The term "principal place of business" means not merely an important or necessary place of business, but the "most important, consequential, or influential" one. Id. This inquiry requires a consideration of the relative importance of the activities performed at each location and the relative amount of time spent at each location. Id. at 175.

On this record, we conclude that petitioner's home office was not her principal place of business. Rather, we conclude that petitioner performed the bulk of her work-related activities at her downtown office. In addition, petitioner performed substantial work at satellite offices and at offices of customers. Accordingly, we conclude that petitioner's home office was not her principal place of business. Petitioner, therefore, is not entitled to a home-office deduction under section 280A.

## Accuracy-Related Penalty

Respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a).

Petitioner's return was prepared by John D. Stoller, a certified public accountant. Petitioner gave Mr. Stoller the receipts for the camera, telephone, and computer and printer. Petitioner also gave him receipts and canceled checks related to the home-office deduction and her parking expenses. She explained to him the circumstances related to parking at the

downtown office. In addition, petitioner gave Mr. Stoller a sheet of paper on which she had compiled the information from her daily calendar relating to her meals expenses.

Pursuant to section 6662(a), if any portion of an underpayment of tax is due to negligence or disregard of rules or regulations, the taxpayer is liable for an amount equal to 20 percent of the portion of the underpayment attributable to such negligence or disregard of the rules and regulations. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioner has the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

If a taxpayer relies in good faith upon the advice of a competent and experienced accountant in the preparation of the taxpayer's return, the addition to tax for negligence or the intentional disregard of rules or regulations is not applicable. Sec. 6664(c); Weis v. Commissioner, 94 T.C. 473, 487 (1990). To show good faith reliance, the taxpayer must show that the return preparer was supplied with all the necessary information and the incorrect return was a result of the preparer's mistakes. Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

After careful review, we conclude that petitioner did not provide Mr. Stoller with all of the necessary information to

prepare her return.  Specifically, she did not advise him about the reimbursement policy regarding parking, she did not have substantiation for meals expenses in excess of what we have allowed herein, and she possibly failed to follow up on the reimbursement for the contest prizes.  Moreover, she has not proven that she fully apprised him of the facts concerning the home-office deduction and the purchase of the telephone.  To that extent, petitioner is liable for the accuracy-related penalty under section 6662(a).  To reflect the holdings of this Court,

<u>Decision will be entered under Rule 155</u>.